IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Plaintiff,　　　)　　　Criminal Case No. 06-79-KI
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　vs.　　　　　　　　　　　　　)　　　OPINION AND ORDER
　　　　　　　　　　　　　　　　　　　　　　)
DANIEL DEVON HARDEN,　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendant.　　)
_____)


　　　　Karin J. Immergut
　　　　United States Attorney
　　　　District of Oregon
　　　　Thomas H. Edmonds
　　　　United States Attorney's Office
　　　　1000 S.W. Third Avenue, Suite 600
　　　　Portland, Oregon  97204

　　　　　　　Attorneys for Plaintiff

John Ransom
Ransom  Blackman LLP
1001 S.W. Fifth Avenue, Suite 1400
Portland, Oregon  97204-1144

      Attorney for Defendant

KING, Judge:

Defendant Daniel Devon Harden is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The firearm was found when police executed a search warrant for a car rented and used by Harden.  Before the court is Harden's Motion for a Franks Hearing (#41).  For the reasons below, I deny the motion.

## FACTS

At 4:08 AM on November 19, 2005, Larry Nobles was shot near a gas station at SE 92nd and Foster in Portland, Oregon.  Detectives Lawrence and Hergert interviewed Nobles at Emanuel Hospital at 8:30 PM that evening.  Nobles told Lawrence that he did not see anybody when he was shot and just "took off."  Based on eye witness reports of the shooting and a shell casing located where Nobles was standing, Lawrence believed that Nobles also fired a gun. Because of Nobles' criminal record, Lawrence concluded that probable cause existed that Nobles was a Felon in Possession of a Firearm.

On November 22, 2005, Lawrence signed an affidavit ("Affidavit 1") to support a search warrant to search the residence at 8931 SE Cooper Street, a 2002 Hyundai, a 1994 Cadillac, and the person of Larry Nobles for evidence related to Nobles being charged with Felon in Possession of a Firearm.  The residence was Nobles' home and the cars were associated with him.

Page 2 - OPINION AND ORDER

Execution of the warrant that day resulted in the seizure of counterfeit money, marijuana, a firearm, and ammunition, among other things.

The police continued the investigation into the shooting, including reviewing a surveillance video from the Copper Penny, a restaurant and bar near the shooting, interviewing eye witnesses, and interviewing two women who gave a ride to a man at the scene after the shooting. On November 23, 2005, Officer McConnell received an anonymous telephone call from a person who said that Danny Harden shot Nobles. The police researched the background of Nobles and Harden and found that they were rival gang members. In 1994, Nobles was convicted of murdering a member of Harden's gang.

On November 26, 2005, Nobles was released from the hospital and arrested for Felon in Possession of a Firearm and a parole violation. When confronted with the results of the investigation, Nobles stated that he "had words" with "Lil' Danny," who Nobles also identified as Daniel Harden. Nobles told Lawrence what happened on the night of the shooting and identified Harden as the shooter. Nobles explained that he and Harden had an altercation 13 years earlier when both were in jail after Nobles' murder conviction.

On December 1, 2005, Lawrence signed an affidavit ("Affidavit 2") to support a search warrant of Harden's home, cars, and person as well as Kevin McClinton's home and person. McClinton was seen on the surveillance video with Harden on the night of the shooting. Lawrence concluded that probable cause existed that Harden and McClinton possessed evidence related to the crimes of Felon in Possession as well as several other crimes concerning the shooting.

On December 2, 2005, Harden was arrested inside a convenience store which he had driven to in a Toyota Camry. Harden would not give permission to search the Toyota. Officers learned that Harden rented the Toyota. Officers also learned during execution of the second search warrant that Harden rented a garage from one of the people at the location searched. The home also contained a locked strongbox.

Later on December 2, 2005, Lawrence signed an affidavit ("Affidavit 3") to support a search of the Toyota, the garage, the Corvette Harden parked in the garage, and the lockbox. On execution of the warrant, the officers found in the Toyota the .38 caliber handgun which serves as the basis for this indictment. Affidavit 2 attaches and incorporates Affidavit 1 and, similarly, Affidavit 3 attaches and incorporates Affidavits 1 and 2.

## LEGAL STANDARDS

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that, under certain circumstances, a defendant is entitled to an evidentiary hearing in which he can attack the veracity of a search warrant affidavit or challenge the omission of material facts in the affidavit. In order to merit a *Franks* hearing, a defendant contesting an affidavit's veracity "must make a substantial preliminary showing that: (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." United States v. Hay, 231 F.3d 630, 638 n.8 (9th Cir. 2000), cert. denied, 534 U.S. 858 (2001). A similar showing is required where a defendant points to material omissions. The defendant must make a substantial preliminary showing that (1) the affidavit contained a deliberate or reckless omission of facts that tend to mislead; and (2) the affidavit supplemented with the omissions would be insufficient to establish probable cause. United

States v. Collins, 61 F.3d 1379, 1384 (9th Cir.), cert. denied, 516 U.S. 1000 (1995).

"[M]isstatements resulting from negligence or good faith mistakes will not invalidate an affidavit

which on its face establishes probable cause." United States v. Hammett, 236 F.3d 1054, 1058

(9th Cir.), cert. denied, 534 U.S. 836 (2001).

More specifically, five requirements must be satisfied before a defendant is entitled to a

hearing under Franks:

> (1) the defendant must allege specifically which portions of the warrant
> affidavit are claimed to be false; (2) the defendant must contend that the false
> statements or omissions were deliberately or recklessly made; (3) a detailed offer
> of proof, including affidavits, must accompany the allegations; (4) the veracity of
> only the affiant must be challenged; and (5) the challenged statements must be
> necessary to find probable cause.

United States v. Perdomo, 800 F.2d 916, 920 (9th Cir. 1986).  The effect of the

misrepresentations and omissions on the existence of probable cause is considered cumulatively.

United States v. Stanert, 762 F.2d 775, 782 (9th Cir.), amended on other grounds, 769 F.2d 1410

(9th Cir. 1985).  If, after a hearing, the defendant establishes by a preponderance of the evidence,

that the false statements or omissions were intentional or reckless, and the remaining material in

the affidavit is insufficient to support a finding of probable cause, the search warrant is

invalidated and the evidence suppressed.  Franks, 438 U.S. at 156.

"Probable cause exists when, under the totality of the circumstances, there is a 'fair

probability that contraband or evidence of a crime will be found in a particular place.'" United

States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238,

103 S. Ct. 2317 (1983)).

## DISCUSSION

Harden argues that Lawrence deliberately or recklessly omitted several pieces of material information from the warrant affidavits.

I.    <u>Information From Nobles</u>

Harden argues that information concerning Nobles was omitted from the affidavits.  In particular, he contends that affidavits did not state:  (1) Nobles denied knowledge of the shooter's identity on numerous occasions; (2) the detectives' threats of federal charges and repeated offers of assistance to Nobles for his possible charges; and (3) Nobles was taking medication which may have affected his thinking during his eight-hour interrogation.

The government points to Affidavits 1 and 2, contending that they make multiple references to the fact that Nobles did not identify the shooter at first.  The government also notes that the affidavits make it clear that Nobles had a significant criminal record and was facing new criminal charges.  Thus, the government argues that the magistrate would realize that Nobles would try to curry favor by identifying the shooter.  The government also relies on the other information which corroborated Nobles' identification of Harden, including that both men were at the Copper Penny that night, that there was bad blood between the two related to an earlier gang homicide, that Harden was identified by another witness as fleeing the scene, that two other witnesses identified a person near the scene wearing a red and white shirt and Nobles said Harden was wearing such a shirt that night, and that one anonymous caller identified Harden as involved in the incident and a second anonymous informant said the dispute started at the Copper Penny.

Page 6 - OPINION AND ORDER

Affidavit 1 states that Nobles told the officer who reported to the scene that he was shot by an unknown person. The affidavit reports a second interview at the hospital during which Nobles said he did not see anybody at the shooting, had no arguments that day, and had no "beef" with anybody that would lead to more than a simple altercation. Affidavit 2 states that Nobles identified the shooter after being presented with additional information learned during the investigation, without specifying what information. That affidavit then reports Nobles' detailed explanation of what happened the night of the shooting. Affidavit 2 also states that Nobles first denied knowledge of the firearm the police found in his garage and later stated that his mother told him that she gave it to his wife for protection.

Harden's first argument, that the affidavits did not state that Nobles denied knowledge of the shooter on numerous occasions, is not supported by the affidavits. Affidavit 1 clearly states that Nobles denied knowledge of the shooter during two different interviews.

I would prefer to have more information in the affidavits concerning the information the officers gave Nobles about his possible charges, but I agree with the government that the magistrate was well informed of not only the possible charges but the fact that Nobles had a Murder conviction in his criminal history. Thus, based on knowledge of the criminal justice system, the magistrate would realize that trading knowledge for assistance was likely on the table, as well as the fact that a felon in possession charge can be brought in either state or federal court and face different penalties. Without additional information in the affidavit, the magistrate could factor this information into his decision on how much weight to give to Nobles' information about Harden.

Affidavit 1 states that Nobles was shot in the arm, breaking the bone, and that the bullet penetrated his chest and was going to be removed in surgery. Affidavit 2, dated December 1, 2005, states that Nobles was arrested on his release from the hospital on November 26, 2005. Although the magistrate was not given information on the medication regime followed by Nobles, he knew that Nobles was released from the hospital only five days earlier after having surgery for a gunshot wound. The magistrate would know that under those circumstances, most people would not be at their best when interviewed by police. There is no evidence that Nobles suffered problems due to the length of the interrogation or asked for medical assistance. On the contrary, Nobles summarizes the police report as explaining that Lawrence asked Nobles' wife to bring his medication to the precinct, that Lawrence continually checked with Nobles about his pain and provided a meal before Nobles took an antibiotic, and that Lawrence watched for effects of the pain medication and believed that Nobles showed neither signs of impairment nor that the pain medication was ineffective. I conclude that the omissions are not facts that would tend to mislead. Further, the addition of these details would not change the probable cause determination because of the magnitude of the information corroborating Nobles' statement.

II.    <u>Eyewitness Identification</u>

Harden argues that the affidavits fail to state that an eyewitness, Jamie Ehrler, did not identify Harden from a photo throw-down until the officer encouraged her to make an identification.

The government provides more information about the photo throw-down from the police report.[1]

> According to the report of Detective Halpin, Ehrler did not initially pick defendant's picture because she "didn't think he was that dark." Detective Halpin then instructed Ehrler that skin tone can be lighter or darker depending on the lighting and asked her what she thought if she put less emphasis on skin tone and more emphasis on other facial features. Ehrler then stated that she was "drawn" to defendant's picture the more she looked at the eyes. She then selected defendant's photograph.

Government's Resp. to Def.'s Mot. for a *Franks* Hr'g at 9. The government argues that the affidavit, which states without elaboration that Ehrler picked Harden from a photo throw-down, is accurate.

The government also argues that the affidavits were not attempting to omit bad information. It notes that Affidavit 2 states that Judith Schmidt, who was with Ehrler, could not identify Harden in a photo throw-down.

The police report does not indicate that the officer did anything to coach Ehrler that would have suggested that she pick Harden's picture as opposed to another picture. The brief request to emphasize facial features rather than skin tone is not impermissible. I also note that Ehrler did not initially pick another subject and then change her mind to Ehrler. Thus, I do not think the magistrate needed the additional information concerning Ehrler's selection to make a valid probable cause determination.

---

[1] I will take the government's word on the content of the police report because it was not provided to me. Similarly, I will take Harden's word on the contents of the police reports which he refers to at length in his chart because he also did not provide the reports to me. Neither party disputes the other's characterizations of the reports.

I conclude that the omission is not a fact that would tend to mislead. Moreover, even if more details about Ehrler's delayed selection of Harden's photograph were included in the affidavit, the affidavit would still establish probable cause to search the various homes, cars, and people because of the numerous pieces of information, including Nobles' statement about Harden's involvement in the shooting, that corroborate Ehrler's identification of Harden.

III.    Recovered Firearm

Harden argues that the third search warrant covering the Toyota was for the purpose of finding the firearm that Harden allegedly used in shooting Nobles. Harden notes that the affidavits did not state that a Glock firearm with one bullet missing was recovered at the home of McClinton who, according to the affidavit, was at the scene of the shooting. A cartridge case for a Glock was found at the scene, making it possible that McClinton was the shooter and not Harden.

The government correctly notes that the third search warrant, which covers the Toyota, was signed by the judge on December 2, 2005 at 12:24 PM. The second search warrant, pursuant to which the Glock was located at McClinton's home, was not executed until 1:40 PM that same day, as shown on the Return of Search Warrant. The fact about the Glock cannot be considered omitted from Affidavit 3 if it was not yet found during the search. Consequently, this argument cannot entitle Harden to a *Franks* hearing.

E.    Summary

I considered the cumulative effect of supplementing the affidavits concerning the issues specifically raised by Harden. I also reviewed the chart in which Harden compares the police reports with the affidavits. Because Harden did not present arguments concerning the

information in the chart, I reviewed the additional information which came from the police reports but did not note anything that I think should have been presented to the magistrate in the affidavits. I conclude that supplemented affidavits still establish probable cause to search the homes, cars, and people for which permission was sought. Consequently, Harden has not made his substantial preliminary showing and is not entitled to a *Franks* hearing.

## CONCLUSION

Harden's Motion for a Franks Hearing (#41) is denied.

IT IS SO ORDERED.

Dated this _____ 26th _____ day of September, 2007.

Garr M. King
United States District Judge