IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Case No. 06-79-KI |
| ) | |
| vs. ) | OPINION AND ORDER |
| ) | |
| DANIEL DEVON HARDEN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Karin J. Immergut
United States Attorney
District of Oregon
Thomas H. Edmonds
Amy E. Potter
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Plaintiff

John S. Ransom
Ransom and Blackman LLP
1001 S.W. Fifth Avenue, Suite 1400
Portland, Oregon  97204-1144

    Attorney for Defendant

KING, Judge:

Defendant Daniel Devon Harden is charged with violating 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm.  Before the court is Harden's Motion to Suppress the Search, Arrest, and Statements (#39).  For the reasons below, I grant the motion in part and suppress the statements Harden made at the time of his arrest.

## FACTS

I repeat the facts as stated in my September 26, 2007 Opinion and Order denying Harden's Motion for a Franks Hearing and will supplement the facts in the analysis as necessary.

At 4:08 AM on November 19, 2005, Larry Nobles was shot near a gas station at SE 92nd and Foster in Portland, Oregon.  Detectives Lawrence and Hergert interviewed Nobles at Emanuel Hospital at 8:30 PM that evening.  Nobles told Lawrence that he did not see anybody when he was shot and just "took off."  Based on eyewitness reports of the shooting and a shell casing located where Nobles was standing, Lawrence believed that Nobles also fired a gun.  Because of Nobles' criminal record, Lawrence concluded that probable cause existed that Nobles was a Felon in Possession of a Firearm.

On November 22, 2005, Lawrence signed an affidavit ("Affidavit 1") in support of a search warrant to search the residence at 8931 SE Cooper Street, a 2002 Hyundai, a 1994 Cadillac, and the person of Larry Nobles for evidence related to Nobles being charged with Felon

in Possession of a Firearm. The residence was Nobles' home and the cars were associated with him.

Execution of the warrant that day resulted in the seizure of counterfeit money, marijuana, a firearm, and ammunition, among other things.

The police continued the investigation into the shooting, including reviewing a surveillance video from the New Copper Penny, a restaurant and bar near the shooting, interviewing eyewitnesses, and interviewing two women who gave a ride to a man at the scene after the shooting. On November 23, 2005, Officer McConnell received an anonymous telephone call from a person who said that Danny Harden shot Nobles. The police researched the background of Nobles and Harden and found that they were rival gang members. In 1994, Nobles was convicted of murdering a member of Harden's gang.

On November 26, 2005, Nobles was released from the hospital and arrested for Felon in Possession of a Firearm and a parole violation. When confronted with the results of the investigation, Nobles stated that he "had words" with "Lil' Danny," whom Nobles identified as Daniel Harden. Nobles told Lawrence what happened on the night of the shooting and identified Harden as the shooter. Nobles explained that he and Harden had an altercation 13 years earlier when both were in jail after Nobles' murder conviction.

On December 1, 2005, Lawrence signed an affidavit ("Affidavit 2") to support a search warrant of Harden's home, cars, and person as well as Kevin McClinton's home and person. McClinton was seen on the surveillance video with Harden on the night of the shooting. Lawrence concluded that probable cause existed that Harden and McClinton possessed evidence

related to the crimes of Felon in Possession as well as several other crimes concerning the shooting.

On December 2, 2005, Harden was arrested inside a convenience store to which he had driven in a Toyota Camry. Harden would not give permission to search the Toyota. Officers learned that Harden rented the Toyota. Officers also learned during execution of the second search warrant that Harden rented a garage from one of the people at the location searched. The home also contained a locked strongbox.

Later on December 2, 2005, Lawrence signed an affidavit ("Affidavit 3") to support a search of the Toyota, the garage, the Corvette Harden parked in the garage, and the lockbox. On execution of the warrant, the officers found in the Toyota the .38 caliber handgun which serves as the basis for this indictment. Affidavit 2 attaches and incorporates Affidavit 1 and, similarly, Affidavit 3 attaches and incorporates Affidavits 1 and 2.

## DISCUSSION

I.     Harden's Arrest

Harden relies on McKnight v. United States, 183 F.2d 977 (D.C. Cir. 1950), to argue that his arrest was a pretext to search the Toyota. The police in McKnight ignored an opportunity to arrest the suspect, for whom they had an arrest warrant, on the public street and instead waited until he entered a house. The police broke into the house, arrested the suspect, and searched the entire house for evidence. The court held that the warrantless search of the house violated the Fourth Amendment because the arrest inside the house was a pretext to search for evidence there when the officers did not have enough information to obtain a warrant for the house. Id. at 978.

McKnight is inapposite. When Harden would not consent to a search of the Toyota, the officers waited until they obtained a warrant for it. McKnight addresses a warrantless search and thus does not apply here.

Harden also contends that the police did not have probable cause to arrest him. He claims that the only evidence was an anonymous telephone call and Nobles' statement. Harden argues Nobles was unreliable because he lied about the shooting when police first interviewed him.

Probable cause is established if, when the arrest is made, the officer had knowledge of facts and circumstances based on reasonably trustworthy information sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense. Bailey v. Newland, 263 F.3d 1022, 1031 (9th Cir. 2001), cert. denied, 535 U.S. 995 (2002).

At the time of Harden's arrest, the police had been investigating the shooting for over two weeks and knew the following information:

A witness at the gas station, John Hermann, saw a black man in a red plaid shirt involved in a dispute just prior to Hermann hearing gunshots. Jamie Ehrler and Judith Schmidt gave a ride to a black man in a red plaid shirt from a location four blocks from the gas station. The man did not want to use the phone at the gas station, because it was not safe for him there, so the women took him to another phone. When Ehrler viewed a photo throwdown of six photographs, she identified Harden as the man in the red plaid shirt. An anonymous caller identified Harden as the shooter, allowing the police to investigate a motive based on the rival gang connections of Harden and Nobles. After initially denying that he knew who shot him, Nobles identified Harden as the shooter and gave a detailed account of what took place. Nobles also explained that he had an altercation with Harden 13 years earlier when both were jailed. At the time, Nobles had just

Page 5 - OPINION AND ORDER

been convicted of killing Harden's friend and gang associate. Video surveillance showed Nobles and Harden at the New Copper Penny Restaurant, which is near the gas station, approximately an hour before the shooting.

The police had evidence that Harden had a motive to shoot Nobles, had evidence that Harden was in the vicinity just prior to and just after the shooting, had evidence that Harden was afraid to return to the location of the shooting to use the phone, and had Nobles' identification of Harden. Although Nobles initially lied to the police, his identification of Harden is corroborated by other witnesses who are trustworthy. In total, the evidence known to the police prior to Harden's arrest was trustworthy enough and sufficient for a prudent man to conclude that Harden shot Nobles. Consequently, the police had probable cause to arrest him.

II.  Harden's Statements Made at the Time of his Arrest

Harden moves to suppress the statements he made immediately after his arrest because the officers did not give him *Miranda* warnings prior to questioning him.

The parties agree that the relevant facts are:

> [D]efendant was taken into custody inside a 7-11 store by Portland Police Officer Derry and Sergeant Warren. Handcuffs were placed on Harden, he was searched, and placed in the backseat of Sergeant Warren's patrol car. Sergeant Warren then asked Harden if he had anything that he was [not] supposed to have in his car, as he pointed to the white Toyota. Harden responded that the car was not his but belonged to his aunt. Harden continued to say that he had walked to the store and saw his aunt talking on the pay phone in front of the 7-11. He said he planned on getting a ride from her when he left and looked towards the pay phones and commented, "I don't know where she went." *Sergeant Warren then asked for his permission to search the Toyota, whereupon Harden replied that it was not his car and he could not give consent. Sergeant Warren responded by asking who his aunt was and Harden replied her name was "Latisha." Sergeant Warren inquired as to how he could get a hold of her and Harden replied that he was not sure because he did not know where she went.* Harden was transported to northeast precinct without further conversation taking place.

Government's Resp. to Def.'s Mot. to Suppress Search, Arrest and Statements at 20-21 (italics added).

The government concedes suppression of Harden's initial statements (not italicized in the quotation) because the government agrees that Sergeant Warren's first question was a custodial interrogation that was intended to elicit an incriminating response. The government contends that Sergeant Warren's request for permission to search the Toyota was not an interrogation intended to elicit an incriminating statement. Thus, the government argues that Harden's response to that question should not be suppressed because no *Miranda* violation occurred.

Before law enforcement officials may question a suspect in custody, the officials must inform the suspect that he has a right to remain silent, that his statements may be used against him in court, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to questioning. Miranda v. Arizona, 384 U.S. 436, 479 (1966).

An officer's request to search "does not constitute interrogation invoking a defendant's *Miranda* rights." United States v. McCurdy, 40 F.3d 1111, 1118 (10th Cir. 1994); United States v. LaGrone, 43 F.3d 332, 335 (7th Cir. 1994) ("because requesting consent to search is not likely to elicit an incriminating statement, such questioning is not interrogation, and thus *Miranda* warnings are not required"). The analysis is not necessarily a simple one, however.

> The mere act of consenting to a search–"Yes, you may search my car"–does not incriminate a defendant, even though the derivative evidence uncovered may itself be highly incriminating. Therefore, we have held that "[a] consent to a search is not the type of incriminating statement toward which the Fifth Amendment is directed. It is not in itself 'evidence of a testimonial or communicative nature.'" United States v. Lemon, 550 F.2d 467, 472 (9th Cir. 1977) (quoting Schmerber v. California, 384 U.S. 757, 761-64, 86 S. Ct. 1826,

> 1830-32, 16 L. Ed. 2d 908 (1966)). But the situation here was different. The prosecution did not merely rely upon Henley's consent to obtain the evidence. It used his admission that he owned the car to link him to the cap, gun and the sunglasses found within it. To determine whether this was interrogation, we must ask whether the agent "*should have known* [that his question] was reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 302, 100 S. Ct. 1682, 1691, 64 L. Ed. 2d 297 (1980) (emphasis added) . . . .

United States v. Henley, 984 F.2d 1040, 1042-43 (9th Cir. 1993). The investigating officer knew that the car he wished to search was the bank robber's getaway car but was not sure who owned it. The court suppressed Henley's statement that he owned the car because, according to the court, "[a]n officer investigating a bank robbery who has the getaway car but isn't sure who owns it should well know that asking a suspect if he's the owner of the vehicle is reasonably likely to elicit an incriminating answer." Id. at 1043.

Harden's situation is different from Henley because the Toyota was not linked to a crime, in contrast to Henley's car being linked to the bank robbery. Sergeant Warren also did not know[1] that the Toyota contained incriminating evidence. He did know that Harden lied about walking to the store. Although a person in possession of a borrowed car can consent to a search of it, Harden's statement about walking meant that, according to his story, he was not in possession of the Toyota and could not consent to a search. Thus, when Sergeant Warren asked if he could search the Toyota, he should have known that it was reasonably likely that Harden would continue with the lie and state that he could not give permission because the car belonged to his aunt. This is incriminating because it is a lie–Harden rented the car. I conclude that the

---

[1] I will address whether probable cause existed to obtain a warrant to search the Toyota in the next section. No one contends that the officers *knew* there was a gun in the car when they obtained the warrant.

italicized question above was an interrogation. I suppress Harden's italicized statement, in addition to the statements the government concedes should be suppressed.

III. Search of the Toyota

Harden first contends that the statement I suppressed should be deleted from the affidavit supporting the search warrant for the Toyota.

Evidence seized during an illegal search is tainted and should not be included in the affidavit supporting a search warrant. Inclusion of tainted evidence in the affidavit though, does not in itself taint the warrant or evidence seized pursuant to it. The court should excise the tainted evidence and decide if the remaining, untainted evidence provides probable cause to issue a warrant. United States v. Bishop, 264 F.3d 919, 924 (9th Cir. 2001). Furthermore, to be untainted by the prior illegal search, the officer's decision to seek the warrant must not have been prompted by what they saw during the prior illegal search. United States v. Hill, 55 F.3d 479, 481 (9th Cir. 1995).

In Lawrence's December 2, 2005 affidavit, I will delete the full paragraph starting at line 25 of page two through line 7 of page 3. I find that Lawrence would have sought the warrant, even if Harden said nothing at the time of his arrest, because Harden drove the Toyota to the convenience store.

I also decline to give any weight to Harden's arguments based on the incorporation of the two earlier affidavits in the Toyota warrant affidavit. I do not fault the officer for using the cut and paste tools on his word processor or for restating an opinion in the second affidavit that was included in the incorporated prior affidavit.

Harden argues that the affidavit lacks probable cause to search the Toyota because Nobles, the anonymous tip, and the witnesses near the scene are not reliable enough. Harden argues that the information was stale because the Toyota was a car rented two weeks after the shooting. He notes the affidavit contains no opinion on whether a gun would be kept in a rental car and also has no opinion on how long people keep a gun allegedly used in a shooting rather than disposing of the gun.

Probable cause is established if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238 (1983).

I agree with the government that it is not unlawful to search multiple locations if there is probable cause connecting all of the locations to the evidence being sought. In the affidavit, Lawrence states that in his experience, people who illegally possess firearms hide them in their vehicles. This statement would cover both owned and rented vehicles as long as the suspect was using the rented vehicle, as Harden was here. I also note that the warrant sought many types of evidence other than a gun. Thus, the lack of an opinion on whether guns used in shootings are typically kept or disposed of does not persuade me that probable cause did not exist.

I also am not persuaded by Harden's argument that much of the evidence was not reliable enough to establish probable cause to search the Toyota. I do agree that some of the evidence–such as the anonymous tip–would not establish probable cause standing alone. As discussed above, however, the police had collected pieces of evidence from multiple sources that corroborated each other. When considered together, the evidence established probable cause that Harden was involved in the shooting. Because he was driving the Toyota, there was also

probable cause to search it. Accordingly, I do not suppress the evidence seized within the Toyota.

## CONCLUSION

Harden's Motion to Suppress the Search, Arrest, and Statements (#39) is granted in part.

IT IS SO ORDERED.

Dated this        6th           day of November, 2007.

                                                  /s/ Garr M. King
                                                  Garr M. King
                                                  United States District Judge